King *v.* Rundle.

---

## KING and others, ex'rs of Rundle, *vs.* RUNDLE and others.

A testator, by his will, after providing for the payment of funeral charges, devised as follows: " I give and bequeath to my wife C. R. my homestead farm. I give and bequeath to the Protestant Episcopal Society for promoting religion and learning in the state of New-York, $5000; the interest and income of which shall be applied, as it shall accrue, to the support of the rector or minister, for the time being, of Christ's Church in the town of G., &c. provided that whatever interest may accrue during a vacancy in the office of rector or minister of said church, shall be paid to the clergyman who shall next fill the said office. I give and bequeath to the Protestant Episcopal Society for promoting religion and learning in the state of New-York, my Potter Kill and my Bell farm, provided the said society is authorized to hold real estate in trust, but if not thus author-

King *v.* Rundle.

ized to hold real estate, then I hereby direct my executors to sell the above mentioned Potter Kill and Bell farms, and to pay over the same, more or less, to the said society. . The interest and income of which shall be paid as it shall accrue, to the rector and minister of Christ church, G., in the same manner, and with the same provisions, as in the last preceding bequest. All the remainder of my property (if any remain) both personal and real, I hereby direct my executors to sell, and the avails of the sale, more or less, it is my will that they should invest in good securities, &c. and the interest it is my will shall be paid to my beloved wife C. R., as it shall accrue, during her natural life. Then it is my will that this money shall be paid to the Protestant Episcopal Society for promoting religion and learning in the state of New-York, and by them held as a fund to be denominated the Rundle fund for the support of missionaries in the diocese of New-York. It is also my will that the said fund shall be left to increase by the addition of the interest to the principal, until it amounts to the sum of $10,000, and then that the interest or income of the said fund as it shall accrue, shall be paid into the disposable fund of Education and Missionary Society of the Protestant Episcopal Church in the state of New-York, for the support of missionaries in the diocese of New-York."

On a complaint filed by this executors, for the construction of this will, the following facts were admitted by the parties: (1.) That the Protestant Episcopal Society for promoting religion and learning in the state of New-York was organized under the act for its incorporation, passed April 4, 1839, and had continued in existence as a corporation from that time to the present; (2.) That a voluntary association, not incorporated, existed, by the name of " The Educational Missionary Society of the Protestant Episcopal Church of the state of New-York," at the date of the will; that in September, 1842, that society surrendered its powers to the convention of the diocese of New-York; since which the society had ceased to exist, and the educational funds had been administered by the society for promoting religion and learning, and the missionary operations had been conducted by a standing committee of the convention, annually appointed; (3.) That for the purposes of this case the testator was seised of the three farms named in his will; (4.) That Christ church was incorporated in the year 1825; (5.) That for a number of years last past, and since the death of the testator, and to the present time, the church or corporation had had no rector, nor any religious exercises, other than occasional missionary services, by the rector of another parish; (6.) That the property affected by the construction of the will was worth $10,000 and upwards.

*Held,* 1. That the devise of the homestead farm to the widow was valid.

2. That the bequest of $5000 to the Protestant Episcopal Society, in trust to apply the interest and income to the support of the rector or minister of Christ church in G. was invalid, as suspending the absolute ownership of the property for an indefinite term, without reference to any designated life or two lives in being, and as directing an accumulation of income for a purpose forbidden by law.

King *v.* Rundle.

3. That the devise of the Potter Kill and Bell farms to the Protestant Episcopal Society, in trust to apply the interest and income to the support of the rector or minister of Christ church in G., was invalid; the corporation being prohibited by law from taking by devise, the trust not being authorized by law, and suspending the power of alienation of an absolute fee in possession, for an indefinite term not measured by lives.

4. That the direction to the executors to sell the remainder (if any) of the real and personal property of the testator, to invest the avails, and to pay the interest of such avails to the widow, for life, was valid.

5. That the bequest of such avails, after the widow's death, to the Protestant Episcopal Society, in trust to accumulate the interest until the fund should reach the sum of $10,000, and then to pay the interest and income as it should accrue, into the disposable fund of the Education and Missionary Society, for the support of missionaries, &c. was invalid.

The judgment further declared that the Potter Kill and Bell farms descended to the heirs at law, and that the bequest of $5000 passed to the next of kin of the testator, in the same manner as if he had died intestate; that the remainder of the testator's property (if any) real and personal was to be held by his executors, the avails invested by them, and the interest of such avails paid to the widow during life; and that upon her death the avails or fund thus created would fall into the estate of the testator, undisposed of by will.

COMPLAINT filed for the construction of a will. On the 5th October, 1850, Reuben Rundle, jun., a resident of Greenville, in the county of Greene, died; having previously made and published his last will and testament. The testator left him surviving a widow and two brothers, Hardy Rundle and Josiah Rundle, his only heirs at law and next of kin. The will was proved before the surrogate of Greene county, on the 23d December, 1850, and letters testamentary granted to Charlotte Rundle, executrix, and Obadiah King, executor, who assumed the execution of the will. The testator died seised of three farms situate in Greenville, one of which was called his homestead farm, one other his Potter Kill farm, and another his Bell farm. The will, after providing for the payment of funeral charges, proceeds as follows:

"I give and bequeath to my beloved and faithful wife, Charlotte Rundle, my homestead farm. I give and bequeath to the Protestant Episcopal Society, for promoting religion and learning in the state of New-York, five thousand dollars: the inter-

est and income of which shall be applied, as it shall accrue, to the support of the rector or minister, for the time being, of Christ's Church, in the town of Greenville, in the county of Greene, in the state of New-York; provided, that whatever interest may accrue during a vacancy in the office of rector or minister of said church, shall be paid to the clergyman who shall next fill the said office.

" I give and bequeath to the Protestant Episcopal Society, for promoting religion and learning in the state of New-York, my Potter Kill farm and my Bell farm, provided the said Protestant Episcopal Society for promoting religion and learning in the state of New-York, by charter, are authorized to hold real estate in trust, but if not thus allowed to hold real estate, then I hereby direct my executors to sell the above mentioned Potter Kill and Bell farms, and to pay over the same, more or less, to the said society. The interest and income of which shall be paid as it shall accrue, to the rector and minister of Christ Church, Greenville, in the same manner, and with the same provisions, as in the last preceding bequest.

" All the remainder of my property, (if any remain,) both personal and real, I hereby direct my executors to sell, and the avails of the sale, more or less, it is my will that they should invest in good securities, (either state stocks or bonds and mortgages on real estate, to double the amount invested,) and the interest, it is my will, shall be paid to my beloved wife, Charlotte Rundle, as it shall accrue, during her natural life. Then it is my will that this money shall be paid to the Protestant Episcopal Society, for promoting learning and religion in the state of New-York, and by them held as a fund to be denominated the Rundle fund, for the support of missionaries in the diocese of New-York. It is also my will that the said fund shall be left to increase by the addition of the interest to the principal, until it amounts to the sum of $10,000, and then that the interest or income of the said fund as it shall accrue, shall be paid into the disposable fund of Education and Missionary Society of the Protestant Episcopal Church, in the state of New-York, for the support of missionaries in the diocese of New-York."

King v. Rundle.

The answers of the defendants substantially claimed that all these provisions of the will were invalid, and that the property descended to the heirs at law and next of kin of the deceased.

The parties admitted the following facts : 1st. That the Protestant Episcopal Society for promoting religion and learning in the state of New-York, was organized under the act for its incorporation, passed April 4th, 1839, and had continued in existence as a corporation from that time to the present. 2d. That a voluntary association, not incorporated, existed, by the name of "The Education and Missionary Society of the Protestant Episcopal Church of the state of New-York," at the date of Rundle's will. That in September, 1842, the said society surrendered its powers to the convention of the diocese of New-York. Since that time the said society had ceased to exist, and the educational funds had been administered by the society for promoting religion and learning, and the missionary operations had been conducted by a standing committee of the convention, annually appointed. 3d. That for the purposes of this case Reuben Rundle was seised of the three farms named in his will. 4th. That Christ Church was incorporated in the year 1825. 5th. That for a number of years last past, and since the death of Reuben Rundle, jun. and to the present time, the church or corporation had had no rector, nor any religious exercises other than occasional missionary services by the rector of St. Paul's church at Oakhill. 6th. That the property affected by the construction of the will in this case, is worth $10,000 and upwards.

It further appeared from the book of minutes of the vestry, that wardens and vestrymen were elected for Christ's Church in 1842, and none thereafter until after the death of Reuben Rundle, jun., in 1850.

*L. Tremain,* for the plaintiffs.

*S. Jones,* for P. E. Society, &c.

*H. Hogeboom,* for Tanners' Bank, &c.

King v. Rundle.

*A. B. Capwell*, for Josiah Rundle.

*Adams & King*, for Hardy Rundle.

*By the Court,* WRIGHT, J.  The devises and bequests in the will of the testator, to which objection is taken, are 1st. The devise of the homestead farm to the widow.  2d. The bequest in trust of $5000 to the Protestant Episcopal Society for the promotion of religion and learning in the state of New-York. 3d. The devise of the Potter Kill and Bell farms.  4th. The clause disposing of the residue of the testator's estate, both real and personal.  We shall examine these devises and bequests in the order stated.

1. The devise of the homestead farm is undoubtedly valid. It is wholly independent of other provisions in the will.  The devise passed to the widow the fee.  (2 *R. S.* 3d ed. 33, § 1.)

2. The next bequest is for a strictly pious use.  The sum of five thousand dollars is given to the Protestant Episcopal Society for promoting religion and learning in the state of New-York, not as an *absolute gift*, as was urged by the distinguished and eminent counsel appearing on behalf of the society, but *in trust*, to apply the interest and income of the sum to the support of the rector or minister, for the time being, of Christ's Church, in the town of Greenville, in the county of Greene; with the direction that whatever interest might accrue during a vacancy in the office of rector or minister, should be paid to the clergyman who should next fill the office.  The bequest to the society is clothed with a trust, and the objections to it are, 1st. That it involves a perpetuity; 2d. That it is void by the statute which forbids accumulations of interest of money, or income of personal property, except for the benefit of minors, and during their minority.

In *Yates* v. *Yates*, (9 *Barb.* 324,) we came to the conclusion that as a court of equity we possess no original inherent jurisdiction to enforce the execution of a charitable trust, void in law, as contravening the statute against perpetuities, or as being unauthorized.  In this case, where the use is strictly a *pious*

one, additional reasons might be urged against the exercise of such jurisdiction, were it important. Unless this trust will stand the statutory tests to be applied to it, it must fail.

The statute provides that "the absolute ownership of personal property shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition; or, if such instrument be a will, for not more than two lives in being at the death of the testator." (1 *R. S.* 773.) The provision is the same in effect as that relating to real estate. This is a general statute, and general in its terms, and applies equally to trusts either of a private or public charitable and pious nature, and to individuals and corporations. There can be, in this case, no absolute disposition of the capital of the fund, until the conditions upon which it is given are performed, and for aught I perceive it is locked up for an indefinite and unlimited period. Nor is the suspense legally limited. There can be no limitation not measured by lives. Lives must be designated, and life must in some form enter into the limitation. (9 *Barb.* 346, *and cases cited.*) No *absolute* period, however short, suspending the power of a limitation, is tolerated; and the possibility that an estate may transcend in duration the limit of the statute, is sufficient to render it void. (*Hawley* v. *James*, 16 *Wend.* 61. *Coster* v. *Lorillard*, 14 *Id.* 265. *Yates* v. *Yates*, 9 *Barb.* 346.) The testator, foreseeing that a vacancy might occur in the office of rector or minister of Christ's Church, directs the accumulation of the interest of the fund, and the payment thereof to the clergyman who should next fill the office. This is a constituent and essential part of the limitation. The provision for accumulation is inseparably connected with the other provisions of the trust, and forms a part of the same fund and means for the support of the rector. It is absolutely void, and the effect is necessarily to avoid the entire limitation. It is no answer to say that the contingency of a vacancy in the rectorship may not occur. As was said by the court in *Andrew* v. *N. Y. Bible and Prayer Book Society*, (4 *Sand. S. C. R.* 188,) "that to render a limi-

tation void, which, if sustained, would create a perpetuity, it is sufficient that the event upon which it depends may happen." Again; if the trust were good, independently of the direction for accumulation, such direction would be clearly void. The statute avoids all directions for the accumulation of the interest, income or profits of personal property, except for the benefit of minors, and to terminate at the expiration of their minority. (1 *R. S.* 773, 774.) Testing this trust, therefore, by the provisions of the revised statutes, it is void, for the reasons that it involves a perpetuity, and directs an accumulation of interest for a purpose unauthorized by law.

But have the legislature conferred upon the Protestant Episcopal Society, by its charter, or by legislation subsequent to the revision of the statutes, the power to execute this trust, though it may contravene the general statutes against the accumulation and perpetuity of property? The society was incorporated in 1839. The objects of the incorporation, as declared by its charter, were "to facilitate to young men designed for the holy ministry, the means of literary and theological education ; to aid in the support of missionaries among the destitute poor or in the remote settlements within this state, and otherwise to promote religion and learning within the same;" and for these objects, or for any purpose connected with them, the power was conferred on the corporation "to purchase, take and hold real and personal estate, and to sell, lease and otherwise dispose of the same, provided the aggregate clear annual value of such estate shall not exceed ten thousand dollars." (*Laws of* 1839, *ch.* 123.) By an amendment of the charter of the society in 1844, it was provided that "it shall and may be lawful for the said corporation at any time to receive gifts of personal property, and to hold the same for any special benevolent purpose or purposes respectively designated by the donors, and tending to or aiding the promotion or increase of religion and piety, or the greater diffusion of religious knowledge, or of sound learning in connection with religion, in any part or parts of the state of New-York; provided, however, that any direction whereby the payment or disposition of the income of any property that shall be so given shall be sus-

King *v.* Rundle.

pended for more than a year at one time, shall be void." (*Laws of* 1844, *ch.* 285.) In 1840, the legislature authorized the grant and conveyance of real and personal property to any incorporated college or other literary incorporated institution in this state, to be held in trust, for either of the following purposes : 1. To establish and maintain an observatory. 2. To found and maintain professorships and scholarships. 3. To provide and keep a place for the burial of the dead. 4. For any other specific purpose comprehended in the general objects authorized by their respective charters. (*Laws of* 1840, *ch.* 318.) In 1841, an act was passed as follows : " Devises and bequests of real and personal property in trust for any of the purposes for which such trusts are authorized under the ' act authorizing certain trusts,' passed May 14, 1840, and to such trustees as are therein authorized, shall be valid in like manner as if such property had been granted and conveyed according to the provisions of the aforesaid act." (*Laws of* 1841, *ch.* 261.) The original charter does not authorize the society to take real or personal property by devise or bequest, or to hold the same in trust for any purpose. The amendment to the charter does not confer upon the society the power to take by devise, but they may receive gifts of personal property, and hold the same in trust for any special benevolent purpose tending to or aiding the promotion and increase of religion and piety, or the greater diffusion of religious knowledge or of sound learning in connection with religion, in any part or parts of the state of New-York: any direction being void whereby the payment or disposition of the income of any property so given shall be suspended for more than a year at one time. The effect of this amendment is to authorize trusts of personal property for the objects specified, and to confer upon the corporation the power to administer the trust. Conceding that a trust to apply the interest and income of a specific sum of money to the support of a rector or minister in Christ's Church is within the purview of the amendment to the charter, still the objection remains that the bequest involves a perpetuity. And this objection cannot be obviated, unless we hold that the legislature have by implication repealed the provisions of the statute

in relation to the suspension of the absolute ownership of personal property. I am not disposed to go to this extent. I think that the "gifts" received by the society to be held in trust under the amended charter, are to be subject to the limitations and conditions as to absolute ownership, imposed by the general statute. I cannot believe that it was the intention of the legislature in amending the charter of this society, in behalf of strictly pious uses, to impliedly abrogate a statute, which struck at the root of a great evil, viz. the accumulation and perpetuity of property.

It is urged that the statutes of 1840 and 1841 authorized a trust of the character contemplated by the testator, and conferred upon the Protestant Episcopal Society the power to execute it. Those statutes, it has been observed, authorized the grant or conveyance, devise or bequest of real or personal property, in trust, to any incorporated college or other literary incorporated institution in this state, for certain enumerated purposes, and also for any other specific purposes comprehended in the general objects authorized by their respective charters ; and it was expressly provided that the trusts authorized might continue for such time as might be necessary to accomplish the purposes for which they were created. The corporation that may take and execute the trusts is designated in the statutes. It must be an incorporated college or other incorporated literary institution. The aim of the statute was to enable those incorporated institutions engaged in the work of intellectual culture, to avail themselves of donations, from time to time, from the benevolent and charitable, to elevate the standard of literature in the state. The trusts authorized are exclusively of a charitable nature. The Protestant Episcopal Society is not "a college or other literary institution," within the scope and meaning of the statute. Its object as a corporation was to promote purely pious ends, viz. to aid young men designed for the holy ministry in procuring an education fitted for their calling, and to support missionaries among the destitute poor, and in the remote settlements of the state. The society was not to instruct ; but to aid by its means, the acquirement and dissemination by others of religious knowl-

King *v.* Rundle.

edge. The corporation is not, therefore, of the character authorized by the statutes of 1840 and 1841, to take by devise, and hold either real or personal property in trust; and this view seems to have been taken by the corporators themselves, and the legislature, when application was made in 1844 to amend their charter, so as to allow them to receive gifts of personal property in trust.

I am of the opinion that the bequest of $5000 in trust to the Protestant Episcopal Society is invalid. It involves a perpetuity and directs an illegal accumulation of income; which direction is inseparably connected with the bequest and the purpose of the trust. As personal estate it passes to the next of kin of the testator.

3. The Potter Kill and Bell farms are devised to the Protestant Episcopal Society in trust, (provided it is authorized by its charter to hold real estate in trust,) to pay the interest and income as it shall accrue, to the support of the rector of Christ's church in Greenville; with the direction, as in the preceding bequest, that whatever interest may accrue during a vacancy in the office of rector, shall be paid to the clergyman that shall next fill the office. If the society is not authorized to hold real estate in trust, then the executors are directed to sell the farms and pay over the avails of the sale to the society, to be held by it in trust, for the purpose for which the real estate is provisionally devised.

In *Yates* v. *Yates*, we held that a trust in real estate for a charitable or pious use was invalid; that by the revised statutes relating to "*uses and trusts,*" none were valid except those expressly enumerated. Besides, all devises to corporations are void, unless such corporations are expressly authorized by charter or by statute to take by devise. (2 *R. S.* 57, § 3.) This is a prohibitory statute, and was so intended by the legislature. (3 *R. S.* 627, *note to* § 3.) The Protestant Episcopal Society is not authorized by its charter to take by devise. The trust therefore is not a valid one, nor is the society authorized to take, unless the trust falls within, or the power be given by, the statutes of 1840 and 1841. We have heretofore expressed the opinion,

that this society is not a corporation authorized to take by those statutes; nor is the trust under consideration of the nature contemplated by them. As a devise of real estate it is consequently void. The testator, however, entertaining a doubt of the authority of the society to take provisionally, devises the farms. If the society cannot take and hold, then the realty is to be converted by the executors into money, and the same paid over to it, for the purpose of the trust. There is a positive statutory prohibition against the corporation taking by devise. Can the direction, therefore, to sell and pay over the proceeds to the society avail? Can the devisor do indirectly what the laws prohibited him from doing directly? The rule, says Chancellor Jones, in *McCartee* v. *Orphan Asylum Society*, (9 *Cowen*, 463,) that a party shall not do indirectly what the law does not permit him to do directly, was made for cases where the act was prohibited by statute, or is in itself illegal or morally wrong, and where the circuity is a device to evade an express provision or rule of law. But if, applying the doctrine of equitable conversion, this clause in the will should be treated as a bequest of personal property, it would then be subject to the objections raised in considering the bequest of $5000 for the same purpose. Regarding the clause either as a devise of real estate or a bequest of personal property, it cannot be sustained. " In this case, however, the lands descend to the heirs at law; for if the object for which a conversion of real estate into personalty is directed fails, either wholly or in part, so that the proceeds are not legally and effectually disposed of by the testator, there is a resulting trust in favor of the heirs at law. There is no equitable conversion of the property in such a case, and it is in equity still considered as real estate, and descends to the heirs of the testator." (7 *Paige*, 213.)

4. The will directs the executors to sell all the remainder of the testator's property, real and personal, to invest the proceeds in good securities, and pay the interest, as it shall accrue, to his widow during her natural life. After her death the capital is to be paid over to the Protestant Episcopal Society, and by it to be held as a fund to be denominated the Rundle fund for the

support of missionaries in the diocese of New-York. The fund is to be left to increase by the addition of the interest to the principal, until it amounts to the sum of $10,000, and then the interest and income as it shall accrue shall be paid into the disposable fund of the Education and Missionary Society of the Protestant Episcopal Church in the state of New-York, for the support of missionaries in the diocese of New-York.

The direction to the executors to sell, the investing of the avails of the sale, and the payment of the income to the widow, during her life, I think are valid provisions. The bequest of the capital of the fund, in trust after her death, to the Protestant Episcopal Society, is objectionable: 1st. It involves a perpetuity. 2d. There is a direction for an accumulation of the fund until it reaches a fixed amount, and for an object entirely unauthorized. 3d. The society into whose treasury the income of the fund is to be paid is not authorized to receive it, and had in fact ceased to exist, prior to the death of the testator. The learned counsel appearing for the society did not contend for the validity of the direction to accumulate; but urged that it was not so connected with other parts of the clause in the will, and with the purpose of the bequest, as to render the whole invalid. We think that it is. There is to be an accumulation of the income until the fund reaches the sum of $10,000; then, not the income of the fund bequeathed, but the income of that fund and the accumulation also, is to be paid to the *cestui que trust.* This is the trust which the society is to accept and execute. The accumulation is inseparably blended with and constitutes a constituent and essential part of the trust. The will of the testator cannot be carried out, nor the trust executed, by the society applying only the income of the fund, that shall come into its hands at the death of the testator's widow. Again, there is no beneficiary. The Education and Missionary Society, an unincorporated institution, in 1842 surrendered its powers to the Convention of the diocese of New-York, and since that time has ceased to exist. Manifestly, the Protestant Episcopal Society cannot hold for its own use. So, also, the trust, as a perpetuity, is illegal. It is a use, without a *cestui que trust,* and involving a perpetuity. The be-

quest over to the Protestant Episcopal Society upon the death of the widow is void. We do not, however, think that this invalid trust is so connected with the trust to be executed by the executors, as that the latter must also fail. We cannot say the main intent of the testator in the disposition of the remainder of his estate was to create and build up the Rundle missionary fund. His widow was to be cared for and supported during her natural life, as a primary end. When the trust was accomplished, and not till then, the residuum of the testator's estate was to be devoted to a pious use. We are of the opinion that the trust to pay the interest to the widow during her life being accomplished, the fund falls into the estate of the testator undisposed of by will.

There must be a judgment declaring, 1st, That the devise of the homestead farm to the widow is valid; 2d. That the bequest of $5000 to the "Protestant Episcopal Society for the promotion of religion and learning in the state of New-York," in trust to apply the interest and income to the support of the rector or minister, for the time being, of Christ's church in Greenville, in the county of Greene, is invalid, as suspending the absolute ownership of the property for an indefinite term, without reference to any designated life or two lives in being, and as directing an accumulation of income for a purpose forbidden by law; 3d. That the devise of the Potter Kill and Bell farms to the Protestant Episcopal Society in trust to apply the interest and income to the support of the rector or minister of Christ's church in Greenville, is invalid, the corporation being prohibited by law from taking by devise, the trust not being authorized by law, and suspending the power of alienation of an absolute fee in possession for an indefinite term not measured by lives; 4th. That the direction to the executors to sell the remainder (if any) of the real and personal property of the testator, to invest the avails, and to pay the interest of such avails to the widow of the deceased during her natural life, is valid; 5th. That the bequest of such avails, after the widow's death, to the Protestant Episcopal Society, in trust to accumulate the interest, until the fund reaches the sum of $10,000, and then to pay the interest and

income as it shall accrue into the disposable fund of the Education and Missionary Society of the Protestant Episcopal Church in the state of New-York, for the support of missionaries in the diocese of New-York, is invalid.

The judgment must further declare that the Potter Kill and Bell farms descend to the heirs at law, and the bequest of $5000 passes to the next of kin of the testator, in the same manner as if Reuben Rundle, jun. had died intestate ; that the remainder of the testator's property (if any) real and personal, is to be sold by his executors, the avails invested by them, and the interest of such avails paid to the widow during her natural life : and that upon the death of such widow, the avails or fund thus created falls into the estate of the testator undisposed of by will.

The judgment should further provide for the payment of the costs and expenses of the parties appearing in this action, out of the estate of the testator.

[Albany General Term, May 2, 1853. *Parker, Harris* and *Wright*, Justices.]

