JOHNSON *et al. v.* MAYNE *et al.*, Trustees of M. E. Church.

In the construction of a will, the intention of the testator is the first consideration; and in ascertaining that intention, the whole context of the will, is to be taken together.

Where a testator devised as follows: "In view of the goodness of Almighty God, in blessing me with a competency of this world's goods, and the privileges and advantages of Christianity and the Church; and having on a former occasion, conveyed by deed to the board of trustees appointed for that purpose, one acre and a half of land out of the northwest corner, (next the school-house lot,) of the southwest quarter of section No. three, of township sixty-nine, range nine, for the purpose of laying aside as a grave-yard, and upon which a house of worship for the use of the Methodist Episcopal Church, should be built. Now, for the purpose of further assisting in carrying out

the design aforesaid, I give and bequeath to the Methodist Episcopal Church, all the residue of my real estate not above disposed of, or the proceeds thereof, to be used and disposed of, as follows: The trustees above referred to, to wit: (naming five persons,) and their successors in office, to take charge of the said devise, bequest, or legacy, and to invest the same in such manner, as will appear to them the most productive and safe, and the proceeds, dividends and interest thereof, to be applied by them and their successors in office, as follows: *Item* 1. Five dollars, to be paid annually to the missionary cause of the Methodist Episcopal Church; *Item* 2. Five dollars, to be paid annually for the support of the preacher or preachers on this circuit, including the premises above named, and which will hereafter be more fully stated; *Item* 3. The balance of the interest or dividend to be applied towards the erecting, finishing, repairing, &c., of the house of worship to be built on the lot above named of one and one-half acres, conveyed to said trustees and their successors in office, for the use of the M. E. Church as aforesaid; and if said interest or dividends, or proceeds of the same, shall not be all needed for the use of building, repairing, &c., then the balance to be appropriated towards paying the minister or ministers of the Methodist Episcopal Church, whose circuit, or place of labor, or station, may include the meeting-house intended to be built on the lot above named and conveyed;" and where certain of the heirs of the testator, filed their bill in Chancery, claiming that the devise was void, and passed no title in the land devised to the Methodist Episcopal Church, or the trustees thereof; and praying that the trustees may be enjoined from selling or incumbering the real estate, and that the title of the complainants and other heirs, may be quieted and set at rest; and where the trustees of the Methodist Episcopal Church, (one of whom was executor of the said will,) answered, setting up the organization of the said Church, and its objects and purposes; that the testator was a member of said Church, and belonged to the Union Class, on the Winchester Circuit, under the jurisdiction of the Iowa Yearly Conference; that said Union Class purchased the lot specified in said devise; and that since the death of the said testator, the members of said Church, composing said Union Class, have been constituted a corporate body under the laws of Iowa, and before the commencement of the suit, had accepted the said devise, &c.; and where the answer was demurred to, which demurrer was overruled by the court.

*Held*, 1. That as a portion of the property devised, was intended by the testator to be a perpetual fund, for raising the sums directed to be applied annually, to the support of the missions of the Methodist Episcopal Church, and for the payment of the minister on the Winchester Circuit, so much thereof as might be necessary for these purposes, must be administered by trustees; and the Church, being an unincorporated society, could not execute the trust.

2. That what was given for immediate expenditure, in erecting and finishing the church building contemplated by the testator, was a good devise to, and might be taken by, the Church, in its own name.

3. That if no other direction were given by the will, there could be no valid objections to decreeing the money to be paid to the person who ordinarily

receives and keeps the funds of the Church, or to its treasurer for the time being.

4. That the legal title to the property devised, vested in the trustees named in the will, for the use of the Church; and that it was not the intention of the testator, to give a fee simple estate in the lands to the Methodist Episcopal Church.

Where property is devised to a charitable use, consistent with law and public policy, and the object is specific, and capable of being carried into effect according to the intention of the donor, and even though no trustees are appointed, and the object of the testator's bounty is incapable of taking the legal title, the terms of the will create a trust in the property in the hands of the heirs of the testator.

*Appeal from the Van Buren District Court.*

In March, 1852, George Miller made his last will and testament in writing, in which, after making some small bequests to his children, and giving all his household and kitchen furniture, and one-third of his personal estate, to his wife, he made the following disposition of his real estate:

" 5. I give and devise to my said wife, Nancy Miller, the one third part of all my real estate, lands and tenements, either by division, if she should desire it, if it can be done equitably, to herself and the lands, or the one third of the proceeds of the value thereof.

" 6. In view of the goodness of Almighty God, in blessing me with a competency of this world's goods, and the privileges and advantages of Christianity and the Church; and having, on a former occasion, conveyed by deed, to the board of trustees appointed for that purpose, one acre and a half of land out of the northwest corner, (next to the schoolhouse lot,) of the southwest quarter of section number three, of township sixty-nine, range nine, for the purpose of laying aside as a grave-yard, and upon which a house of worship, for the use of the Methodist Episcopal Church, should be built. Now, for the purpose of further assisting in carrying out the design aforesaid, I give and bequeath to the Methodist Episcopal Church, all the residue of my real estate not above disposed of, or the proceeds thereof, to be used and

Johnson et al. v. Mayne et al.

disposed of as follows: The trustees above referred to, to wit, J. W. McManaman, George Cupp, Aaron White, E. Mayne and Frederic Zollers, and their successors in office, to take charge of the said devise, bequest, or legacy, and to invest the same in such manner as will appear to them the most productive and safe, and the proceeds, dividends, and interest thereof, to be applied by them and their successors in office, as follows:

"*Item* 1. Five dollars, to be paid annually to the missionary cause of the Methodist Episcopal Church.

"*Item* 2. Five dollars, to be paid annually, for the support of the preacher or preachers on this circuit, including the premises above named, and which will hereafter be more fully stated.

"*Item* 3. The balance of the interest or dividend, to be applied towards the erecting, furnishing, repairing, &c., of the house of worship, to be built on the lot above named, of one and one-half acres, conveyed to said trustees and their successors in office, for the use of the M. E. Church as aforesaid; and if said interest or dividends, or proceeds of the same, shall not be all needed for the use of building, repairing, &c., then the balance to be appropriated towards paying the minister or ministers of the Methodist Episcopal Church, whose circuit or place of labor, or station, may include the meeting-house intended to be built on the lot above named and conveyed."

Miller, the testator, died in 1855, and in May, of that year, the will was proved and admitted to record in the county court, and probate thereof granted to George Cupp, one of the executors therein named. McManaman, the other executor named, having previously departed this life. At the time of his decease, Miller was seized of 320 acres of land in Van Buren county, the same devised by his will. He left thirteen heirs.

The complainants, representing the interests of five of these heirs, and having, since the admission of the will to probate, purchased the interest of Nancy Miller, the widow, in the land, in August, 1855, filed this bill, claiming that

the will of their ancestor, so far as it attempts to devise the land or its proceeds, to the Methodist Episcopal Church, is void and passes no title, and urging the following reasons, among others, why the devise is inoperative:

*First.* That at the time of the execution of the will, and at the death of the testator, the said Methodist Episcopal Church was not capable of taking by that name and style, the real estate ·devised to it; and that it could, as such church, neither sue nor be sued, and could neither purchase, sell, nor convey real estate, and·could only take through its trustees, by devise to them and their successors in office.

*Second.* That the persons appointed to receive the real estate or the proceeds thereof, were not the trustees of the church; and that they had no lawful organization, and were only named as trustees by the testator, and had no successors.

*Third.* That the devise to the church was procured by undue influence over the mind of the testator, by the persons named as trustees, and by false and fraudulent representations to him, as to the feelings entertained towards him by his children and heirs; and that whilst old and feeble, and laboring under deception produced by such false representations, he made his will devising his real estate to said church.

The complainants show by their petition, that the said Cupp, as executor, and the said Mayne and others, as trustees, are claiming the interest in said real estate devised to said church; and that said executor is proposing to sell and dispose of the same, and to invest the proceeds for the purposes named in the will. They make the executor and trustees, and the Methodist Episcopal Church, parties defendants, and pray that the said executor may be enjoined from selling, or in any manner incumbering said real estate; that the devise to the church may be declared void; and that the title of complainants and the other heirs to the same, may be quieted and set at rest. A demurrer to the petition by the defendants, was overruled by the court.

The executor and the trustees then filed their answer, in

which, admitting the other formal matters set up in the petition, as to the will and the propate thereof, they expressly deny that the devise to the church, was induced by any undue or controlling influence over the mind or will of the testator, by defendants or any other persons, or that defendants made any false or fraudulent representations to him, as to the feelings, friendly or otherwise, entertained towards him by complainants, or by any of his children ; or that, at the time of making said will, he was frail of body or mind, or laboring under the influence of any false representations whatever. And as trustees for the Methodist Episcopal Church, they answer further, showing the organization of said church in the United States, in 1784, and its continued existence since, as a religious and charitable association, composed, for the more convenient and efficient carrying out of its proper work and objects, of annual conferences, districts, and circuits or stations ; that the members of the society embraced within each circuit or station, are subdivided into smaller companies, called classes, according to their respective places of above, consisting of twelve or more persons ; that Miller, the testator, at the time of his death, was a member of the Methodist Episcopal Church, and belonged to the Union Class on the Winchester Circuit, under the jurisdiction of the Iowa Yearly Conference ; that the Winchester Circuit embraced all the members of said church, residing in a certain territory of the northern portion of Van Buren county, Iowa ; and the said Union Class, a subdivision of said circuit, embraced all the members of said church within the locality where the said George Miller resided ; that the said defendants, and the said McManaman, now deceased, were also members of said church, belonging to said class ; that with a view to secure to themselves and the members of said church at large, a place of worship, for hearing the preaching of the gospel, by such minister or ministers of the Methodist Episcopal Church, as should from year to year be appointed by the Iowa Annual Conference, to have the supervision of the said circuit, they, together with the other members of the said Union Class, purchased

of the said George Miller, one and a half acres of land, within
the locality where the members of said class resided, where-
on to erect a church; that the conveyance was made to de-
fendants and said McManaman, as trustees, and the title is
held by them as the title of all the property of said church,
dedicated to religious purposes, is held, viz: in trust for the
whole church; that the said conveyance is the same referred
to by said George Miller in his will; that the title of all
church property is held by trustees, members of the church,
appointed by the preacher in charge of the circuit; and
that provision is made in said conveyance, and by the rules
and discipline of the church, for filling any vacancy that
may occur in the body of the trustees.   They further show,
that the said George Miller, before making his will, had
made liberal provision for his children, and had done what
he considered and expressed, was a father's part by them,
in dividing a considerable estate between them; that the
land devised to defendants, had for many years before his
death, been intended by him for the purposes expressed in
his will; and that it should be dedicated to the uses afore-
said, was the treasured wish of his heart.   They claim that
there is no uncertainty, as to the place where the said church
building is to be erected, nor as to the purposes for which
the said devise of the testator was intended; that there can
be no failure of the beneficiaries intended to be the recipients
of the testator's bounty; that the said church in its organi-
zation, is a missionary society, and embraces in its objects,
the preaching and distributing the word of God, in foreign
and heathen lands, and in the remote and sparsely settled
districts of our own country; that the support of missions is
committed to each society and congregation, as such; that
annual collections are required to be made by the preacher
appointed to each circuit, in every class and congregation,
and the moneys so collected and received, amounting to a
large sum, are by the authorities of the church, devoted to the
missionary objects above stated; and that according to the
constitution and organization of the church, the annual ap-
pointment of a minister of said church to said circuit, em-

bracing the locality, where said testator resided, and where said house of worship is to be built, is as certain as any future human event can be. They claim that there are no other trustees of said church than themselves; that the testator intended that the legal title of said real estate, should be vested in them as trustees, for the use and purposes set forth in his will; and that they, and the members of the church on said circuit, at the place designated, are the beneficiaries under said devise; that they are many in number; and that the said building is much needed. They further show, that since the death of said George Miller, the members of the said Methodist Episcopal Church, have been constituted and organized under the statute, a body corporate, with power to buy, receive, hold and sell real estate; and before the commencement of this suit, had accepted the devise made by the will of the said George Miller, with the view of carrying out the objects of the same. They accordingly ask, that if they are not, by virtue of the will aforesaid, and their incorporation aforesaid, invested with the legal title of said real estate, for the trusts mentioned in the will, that the said real estate may still be charged with the charitable uses contained in said will; and that they, by the appointment of the court, as the trustees of the said church, may be authorized to carry out and complete the intentions of the testator. The defendants exhibit the deed to them as trustees, by said Miller, for the one and a half acres of land for the site of said church; and the articles of incorporation, whereby the members of said church had been constituted a body corporate, by the name of the "Trustees of the Methodist Episcopal Church, Union Society, Winchester Circuit, Iowa Annual Conference," with power to take and hold property for the uses of the church, according to the usages thereof.

The complainants filed a demurrer, to so much of the answer as sets forth the organization and constitution of the Methodist Episcopal Church; that the Winchester Circuit was a branch of such church; that the Union Class or Society, to which the said George Miller, as a member of the

church, belonged, was within the bounds of said circuit; and that a lot of ground had been purchased by said trustees of the testator, on which to erect a church building; and that the said trustees had since been constituted a body corporate, and for causes of demurrer, assigned the following: 1. That said Methodist Episcopal Church is not shown to be a corporation, that could take by devise or grant. 2. That said Winchester Circuit, nor said Union Class, is not shown to be a corporation that could take by devise. 3. That the devise was to the Methodist Episcopal Church, and not to said Union Class or Society. 4. That said incorporation was organized since the death of said George Miller; that it cannot take by devise; and that the devise in the will was to the Methodist Episcopal Church, and not to said defendants as trustees, nor to said incorporation. The demurrer was overruled, and from the judgment of the court overruling the demurrer, the complainants appeal.

*Knapp & Caldwell*, for the appellants.

*Charles C. Nourse*, for the appellees, made the following points:

1. This is a devise to the trustees, in trust for the church. The court will not give to the words used, a strict legal construction, where it is in manifest violation of the will, as manifested by the subsequent part of the will, or the context. *De Kay* v. *Irving*, 5 Denio, 646.

2. This is a devise of personal property. What is directed to be done will, in equity, be considered as done. A devise of money, to be invested as real estate, is a devise of real estate, and *vice versa*. Story's Equity.

3. Dedications for public uses, and bequests for charitable uses, will be sustained by a court of equity, without a trustee. The heir will be charged with the execution of the trust, or the court will appoint trustees.

In support of which, he cited the following authorities: 6 Peters, 432; 3 Ib. 120; 2 Ib. 566; 9 Howard, 55; *Vidal* v. *Girard's Ex.*, 2 How. 128; 6 Ohio, 129; 9 Ib. 203; 11

Serg. & R. 88; 7 Smedes & M. 663; 6 Paige, 640; 7 Johns. Ch. 292; 9 Cowen, 437; 4 Iredell, 19; 4 Georgia, 404; 7 Vermt. 241; 4 Dana, 354; 15 Maine, 414; 7 Paige, 77; 4 Barb. 404; 9 Ib. 324.

STOCKTON, J.—As the argument for the appellants, is chiefly based on the alleged incapacity of the Methodist Episcopal Church to take the estate devised, we shall, in the first place, briefly examine that question. It is claimed that the devise is void, and that the estate descended to the heirs, not for the want of, or uncertainty as to the, beneficiaries; nor because the object of the charity was unlawful; but because the church, not being incorporated, is incapable of taking the trust as a society.

The authorities maintaining this doctrine, are of high respectability. Among those, in which it has been held that such a devise is void, may be mentioned, *The Baptist Association* v. *Hart's Exrs.*, 4 Wheaton, 1, and *King* v. *Rundle*, 15 Barb. 139. In the first-named case, the bequest was "to the Baptist Association that for ordinary meets in Philadelphia, to be a perpetual fund for the education of youths of the Baptist denomination who shall appear promising for the ministry." The bequest was held, not only to be void at law, but one that could not be sustained by virtue of those rules by which a court of chancery, exercising its ordinary powers, is governed. In *King* v. *Rundle*, charitable bequests were made to several religious bodies, and the remainder devised to the Protestant Episcopal Society, for certain purposes. The bequests to the religious bodies, and the remainder over, were held void. The distinction must be borne in mind, however, as to the power of the chancellor to enforce a charitable trust, which was either illegal, or void for indefiniteness, or vague generality, and such as are only void at law, but which will be protected and enforced in equity. In *M'Cord* v. *Ochiltree*, 8 Blackford, 16, the bequest was to "the Theological Seminary at South Hanover, in the state of Indiana, all the remainder of my estate, to continue a permanent fund, and the interest to be applied

to the education of pious, indigent youths, who are preparing themselves for the ministry of the gospel, and those only who strictly adhere to the Westminster Confession of Faith, in its literal meaning." This bequest was held to be void at law, for the reason that the Theological Seminary was at the time, an unincorporated society, and could not execute a trust of that character, for want of succession; and because the objects of the testator's benevolence were too vaguely indicated, to be enabled to take the legacy, without the interposition of a trustee. The bequest, though void at law, was enforced in equity, as a charity, both in reference to the statute of 43 Elizabeth, chapter 4, and to the law of charities, independent of that statute.

The case of *Burr's Exrs.* v. *Smith*, 7 Vermont, 241, was a bill in Chancery by the executors of the testator, in which the different parties claiming legacies under the will of Joseph Burr, were brought before the court, in order to the determination of the question, whether legacies to certain charitable associations, to wit: The American Bible Society, the American Colonization Society, the American Tract Society, and others of like character, should be paid. The legacies were all to the treasurers for the time being, of voluntary associations unincorporated. The will was sustained, and the legacies ordered to be paid. The court say: "Societies, or bodies of men unincorporated, have ever been considered at common law, capable of receiving gifts or legacies, to be applied to charitable uses," and "the want of a charter of incorporation, was no impediment to a body of men, changing from time to time, from receiving and distributing, according to the intent of the donor, money or other property, given or granted for a charitable use." In the same case, we find a reference to the opinion of Judge BALDWIN, in the case of *Magill* v. *Brown*, decided in the United States Circuit Court for Pennsylvania, upon the subject of charitable uses, arising under the will of Sarah Zane. We do not find any full report of the case, but it is referred to, and its substance stated, in so many instances, that we think we are justified in citing it, without any apprehension

of a mistake as to its purport.   Certain bequests were made by the will of Sarah Zane, to the Yearly Meeting of Friends in Philadelphia, an unincorporated association for purposes of general and indefinite charity.   These, as well as other bequests of a kindred nature, were held to be good and valid.   Religious and charitable, though voluntary associations, were shown, in accordance with the doctrines of the state courts of Pennsylvania, to be capable of holding property, for pious and charitable uses ; and as to such purposes, they were to be deemed incorporated.   Judge BALDWIN remarks, that " the common law requires no charter, to enable a body of men to purchase chattels, or receive donations of money, a chattel interest, or an estate for the life of the grantee in land, by their name as a body, without other words."   7 Vermont, 279, 316 ; 2 Howard, 197 ; 17 Howard, 390.   An act of incorporation may be necessary to enable them to have perpetual succession, or to receive and hold goods or personal property in succession.   The court say, however, in *Burr* v. *Smith, supra*, " that a decision, that a company of individuals are incapable of receiving gifts for a public or charitable purpose, or that such a society should not be protected in the enjoyment of property 'given to them, would be at variance with all their received ideas, and the establishment of the state, and directly at war with the principles of religious freedom.   And herein they make no distinction between protecting them in the enjoyment of property actually in possession by gift, and enabling them to recover what is bequeathed to them, by will.   7 Vermont, 280.   The case of the *Baptist Association* v. *Hart's Exrs.*, so far as it decided that a court of chancery had no power to execute a charity void at law, independently of the statute of 43 Elizabeth, chapter 4, was overruled by the case of *Vidal* v. *Girard's Exrs.*, 2 How. 127, in which it was held, that there is an inherent jurisdiction in equity, in cases of charity, and that charity is one of those objects, for which a court of equity has, at all times, interfered to make good that which, at law, was an illegal and informal gift ; and that cases of charity, in courts of equity in England, were valid,

independently of, and previous to, the statute of Elizabeth. 2 Howard, 195. See also, 8 Blackford, 23 ; *Potter* v. *Chapin*, 6 Paige, 649; *Bartlett* v. *Nye, &c.*, 4 Metcalf, 380. In *Potter* v. *Chapin*, Chancellor WALWORTH says : " Although some doubt was thrown upon the question of charitable donations, for the benefit of a community or body not incorporate, so as to be capable of taking and conveying the legal title of property, by the decision of the Supreme Court of the United States, in the case of the *Baptist Association* v. *Hart's Exrs.*, I believe it is generally admitted, that the decision in that case was wrong. And it may now be considered as an established principle of American law, that the Court of Chancery will sustain and protect, such a gift, bequest, or dedication of property, to public or charitable uses, provided the same is consistent with local laws and public policy, where the object of the gift or dedication is specific, and capable of being carried into effect according to the intention of the donor."

Our conclusion from these authorities is, that as a portion of the property devised in this instance, was intended by the testator, to be a perpetual fund, for raising the sums directed to be applied annually to the support of the missions of said church, and for the payment of the minister on said Winchester Circuit, so much thereof as may be sufficient for these purposes, must be administered by trustees ; and the church, as a society unincorporated, could not execute the trust. But what is given for immediate expenditure, in erecting and finishing the church building, contemplated by the testator, would be a good devise to, and might be taken by, the church, in its own name. And, if no other direction were given by the will, there could be no valid objections, to decreeing the money to be paid to the one who ordinarily receives and keeps the funds of the church, or to its treasurer for the time being. *Burr* v. *Smith*, 7 Vermont, 311 ; *Walker* v. *Childs*, Ambler, 524.

We next advert to the will of the decedent, in order to ascertain in whom the legal title of the estate devised, is vested by that instrument. In arriving at a true construc-

tion, the intention of the testator is the first consideration, and the whole context of the will is to be taken together. From the language, "I give and bequeath to the Methodist Episcopal Church, all the residue of my real estate not above disposed of, or the proceeds thereof," separated from any other portion of the will, it might readily be inferred, that the testator intended to devise the real estate, so that the church should take the fee. But the inquiry is immediately suggested: Why, if such was his intention, should he direct that the defendants, Mayne and others, take charge of the devise, and invest the same in the safest and most productive manner, and apply the proceeds as by him further directed? Does this not look, as if it was his intention to vest the legal title in the trustee? There is an evident conflict, if we suppose it to have been his intention to vest the title to the estate in the church, in directing another body to take charge of it, and invest and disburse the proceeds. We have not been able to arrive at the conclusion that it was the intention of the testator, to give a fee simple estate in the lands to the Methodist Episcopal Church. On the contrary, we think it is clearly to be gathered from the language of the will, that such was not his intention. He speaks of having already conveyed one and a half acres of land to the board of trustees, the defendants in this suit, upon which a house of worship, for the use of the Methodist Episcopal Church was to be erected; and in the language of the will, "for the purpose of further assisting in carrying out the design aforesaid," he devises the residue of his real estate to the church, to be used and disposed of, as follows: "The trustees above referred to, and their successors in office," [giving the names of defendants,] "to take charge of the said devise, bequest, or legacy, and to invest the same in such manner as will appear to them the most productive and safe, and the proceeds, dividends, and interest thereof, to be applied by them and their successors in office, &c." We think it may fairly be inferred from this language, that the testator devised, and intended to vest, the legal title in the trustees named in his will, for the use of the church, and for further

assisting in carrying out the design of erecting the house of worship referred to, on the land before conveyed by him to the same trustees. Such, in our opinion, being his intention, it is to be respected by us, and as far as possible, and consistent with right, it is to govern.

If the language used by the testator in the several clauses of his will, is such as to give to the M. E. Church, and to the trustees, the defendants, respectively the fee simple title to the land, so far as the claims are irreconcilable, the latter must prevail—the first deed, and the last will, being always entitled to take place. 2 Roper on Legacies, 328; Preston on Legacies, 236; *Sims* v. *Doughty*, 5 Ves. 243; *Doe* v. *Leicester*, 2 Saunton, 109. In *Boyd* v. *Talbott*, 12 Ohio, 212, the will of Boyd gave all his estate, real and personal, and all moneys and proceeds arising from the same, and all moneys remaining after the payment of debts, to his wife, for the support of herself and family. He directed what remained of his property, after his wife's death, to be divided among his children by his executors. He further directs his executors to lease the premises, and after paying the ground rents and taxes, to pay the proceeds to his wife. The court say, in reference to the legal title: "The first clause standing alone, would invest the wife with the title. But the power to lease, in the clause last cited, coupled with the burden of paying taxes and ground rents, implies a larger interest than a mere naked power. The intention of the testator was, not to limit an estate to the wife, but an interest in the proceeds. The title of the land, then, is found in the executors of Boyd." To the same purport, is the case of *How* v. *Fuller*, &c., 19 Ohio, 51. We are of opinion, therefore, that the trustees named in the will, took the legal title to the real estate devised, to the use of the Methodist Episcopal Church.

The position assumed by the complainants, that if an estate is devised to a church or society incapable of taking the legal title, the devise is void, and the estate so devised descends to the heirs, unincumbered, cannot receive our sanction. The property, in this instance, is given to a

charitable use, in every respect consistent with our laws and public policy. The object is specific and capable of being carried into effect, according to the intention of the donor. Such being the case, even though no trustees were interposed, and the church were incapable of taking the legal estate, the terms of the will create a trust in the property in the hands of the heirs of Miller, the testator. In *McCartee* v. *Orphan Asylum Society*, 9 Cowen, 484, JONES, Chancellor, says : " It is the settled doctrine of the court, in the construction of wills, and the administration of trusts, that a trust shall never be permitted to fail, through the failure or disability of the trustee to execute the trust; but shall be supported upon the intention of the testator; that the trust is attached and fastened to the land ; and that the land remains chargeable with it, in the hands of the heirs or devisee. *Burr* v. *Smith*, 7 Vermont, 307; Willard's Eq. 580. So in Ohio. If the bequest sufficiently defines the trust, though it may be inefficacious to pass the legal title, the heir is charged with its performance. *McIntyre's Poor School* v. *Zanesville Canal and Manufacturing Company*, 9 Ohio, 287.

In *Bartlett* v. *Nye*, 4 Metcalf, 378, the testator had devised real estate to the American Bible Society. The heirs claimed the estate, on the ground that the devise was void, the society being unincorporated. It was held by the court, that a valid trust having been created by the will, the heir will become the trustee of those for whose use the donation is intended, and may be compelled by a court of equity, to execute the trust. Wherever a person, by will, gives property, and points out the object, the property, and the way in which it shall go, a trust is created, unless he shows clearly that his devise as expressed, is to be controlled by the trustee, and that he shall have an option to defeat it. *Inglis* v. *Trustees of the Sailors' Snug Harbor*, 3 Peters, 112 ; 2 Vesey, Jr. 335. And the court might, upon well established principles of equity, have added, that when such a trust is created, a court of equity will support and enforce it, even if the donor had appointed no trustee, and had let the prop-

erty go to his heirs; for it is well 'settled, that where there is a beneficial trust, a court of equity will act as trustee, or appoint one, if necessary, for effectuating the objects of the grantor. *Moore's Heirs* v. *Moore's Devisees,* 4 Dana, 38. In the same lucid and able opinion, ROBERTSON, C. J., says: "Whenever the only objection to a devise or legacy is, that it is for the benefit of a class of private individuals, described collectively by some characteristic trait, by which they may be identified, if the donation be a charity within the statute of 43 Eliz., and is therefore valid, it is as a matter of course, as good and available as it would have been at common law, had it been to a competent person, in trust for another similar person identified in the will by his proper name; and consequently, whoever may hold the legal title, if it did not pass by the will, will hold it in trust for the collective body, to whose use it was dedicated by the testator. 4 Dana, 368.

The case of *Stone* v. *Griffin,* 3 Vermont, 400, was an action of ejectment for lands, and in its chief features bears a strong resemblance to the present case. The testator devised to the Methodist Episcopal Church, in Charlotte: "A fourth part of his real estate, the interest of which is to be appropriated for the support and payment of the constant preaching of the gospel in Charlotte, by the ministers of the Methodist Episcopal Church or Society, the principal or original stock to be kept whole, and unexpended, and the interest thereof only, annually appropriated and expended as aforesaid." He further provided for the expenditure of the surplus, if any, in erecting a meeting-house, and purchasing books for the society; and in case of the extinction of the said Church or Society, the interest was to be placed at the disposal of the Annual Conference within whose bounds the said town of Charlotte might be comprised. He appointed seven persons agents and trustees, who were to receive, possess, improve, and take charge of said real estate, for the use and benefit of said Church in Charlotte, subject to the rules and discipline of the Methodist Church. The one-fourth of the real estate was set off according to the will, by the Court of Probate, to the trustees for the church, and they took

Johnson et al. v. Mayne et al.

possession.   This action of ejectment was brought by the executor, for the heirs of the testator, claiming that the devise to the church was void.   The court held, 1. That the church in Charlotte, having no legal perpetuity, could not take the fee; 2. That nothing but the use was given to it by the will; 3. That if the church should become extinct at Charlotte, and there should cease to be an Annual Conference of the Methodist Episcopal Church, there would then be no *cestui que trust*, and the estate would revert to the heirs at law; 4. That it was the intention of the testator that the trustees named, and their successors, should take an estate in fee; yet, as neither the church nor the trustees, possessed sufficient perpetuity to support a fee, the estate descended to the heirs at law, charged with the trust, and they must hold it for the church.   On their failure or refusal, the *cestui que trust* shall not lose the use, for want of a trustee.   The court, on application, will appoint others to execute the trust.

We therefore think, that in no event, except upon the entire failure of the *cestui que trust*, would the complainants in this case, the heirs at law of the testator, be entitled to claim the estate devised by him for the charitable purposes mentioned in his will; and especially can they not come into a court of chancery, to have the devise declared void, and their claim to the estate made good.   It belongs peculiarly to a court of equity to enforce a trust, recognized by the law of the land.   And where the trust is for a definite object, and is sustained in point of law, there is no reason why the court, instead of declaring it void, and setting it aside, should not carry it into effect according to the benevolent intentions of the testator.   The answer of the defendants, in order to show the nature of the charitable use intended to be established by the testator, and its consistency with the laws and public policy, as well as the capacity of the church to take the estate devised to it, sets forth fully and at length, the constitution and organization of the Methodist Episcopal Church, its nature, objects, and purposes. We are satisfied, from the exposition given, that it should receive the protection of the court, in securing it in the en-

joyment of the estate bequeathed to it. We think we run no hazard in deciding, that the property may be safely committed to the care of the church and its officers. The objection raised by the demurrer is, that the devise was to the church, and that as the church was not an incorporated body, it could not take the estate; and that consequently the devise is void. We have endeavored to show, that this objection is answered by the fact, that the legal title of the property was vested in the trustees named in the will, and not in the church as a body or society. Such being our opinion, it is not necessary to inquire, whether it is to be considered as a gift of real or personal estate. That question may be determined by the church or those entitled to the beneficial interest. If land is devised, to be turned into money, it is presumed in equity to assume the very character of money. The party entitled may, however, prevent any conversion of the property from its present state, and hold it as it is. Story Eq. § 793. Nor do we see, that it is material for us to determine, whether the defendants take the estate in their corporate capacity, acquired since the death of the testator, or as trustees named in his will, and appointed to that office by the authorities of the church. The record shows, that it is the same persons who are to receive it, in whatever capacity they act. As they are shown to be all members of the Methodist Church, and of the particular class or society to which the decedent belonged, and for whose use the house of worship was designed to be erected, we see nothing to negative the propriety of defendants' transferring the title and possession of the property they hold as trustees under the will, to the incorporation they represent, by appointment of the authorities of the church. *Dutch Church* v. *Mott*, 7 Paige, 81. The important point is, that the will of the testator be carried out, according to his intention, and that the charitable trusts established by it have their full and proper effect. To this purpose it will be necessary that the trustees invest an amount of the proceeds of the estate in their hands, sufficient to enable them to pay annually to the authorities of the church, the sum of five dollars for the

support of missions under its care; and a like sum for the minister or ministers whose place of labor shall embrace the class or society worshiping at the meeting-house erected on the land conveyed to said trustees. The remainder of the estate, or so much thereof as may be requisite, is to be applied by them in erecting and finishing the said house of worship, or in repairing the same, if already built and finished. If there is any residue remaining after providing for these objects, it is to be invested, and its annual proceeds added to the amount before directed to be applied towards the payment of the minister or ministers on the circuit.

The judgment of the District Court on the demurrer, is affirmed.